UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SELIM ZHERKA,<br><br>                       Plaintiff,<br><br>      - against -<br><br>PHILIP AMICONE, individually, and PHILIP AMICONE, in his capacity as Mayor of the City of Yonkers, New York,<br><br>                       Defendants. | No. 07 Civ. 9618 (CLB) |

**MEMORANDUM OF LAW OF NONPARTY WITNESS GANNETT SATELLITE INFORMATION NETWORK, INC. IN SUPPORT OF ITS MOTION TO QUASH**

 

SATTERLEE STEPHENS BURKE & BURKE LLP

Mark A. Fowler (MF-4605)
Glenn C. Edwards (GE-0696)
Attorneys for Nonparty Gannett Satellite Information
    Network, Inc.
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT...................................................................................................................................3

      I.      SERVICE OF THE SUBPOENAS WAS INEFFECTIVE ....................................3

      II.     THE SUBPOENAS SEEK INFORMATION UNRELATED TO THIS CASE AND THEREFORE IMPOSE AN UNDUE BURDEN ON GANNETT ...............4

      III     THE POSTERS' FIRST AMENDMENT RIGHT TO SPEAK ANONYMOUSLY PRECLUDES ENFORCEMENT OF THE SUBPOENAS ....5

CONCLUSION..............................................................................................................................12

Nonparty witness Gannett Satellite Information Network, Inc. ("Gannett") respectfully submits this memorandum of law in support of its motion to quash three subpoenas, dated February 4, 2008, issued by plaintiff Selim Zherka in this action.

## PRELIMINARY STATEMENT

Anonymous speech has a long and valued history in this country. With the advent, even the explosion, of the internet, the opportunities for speakers to reach new audiences – and the potential value for the anonymity of those speakers – has increased exponentially. The chance for speakers to remain anonymous, or pseudonymous, has made the Internet a wide-open, robust forum for discussion and information exchange on a scale that undoubtedly our Founding Fathers could have never imagined when they wisely ensconced freedom of speech in the First Amendment.

Plaintiff Selim Zherka's subpoenas in this case are a frontal attack on that freedom. For reasons yet undisclosed, Zherka has sought to unmask the identity of three posters to the public forums of the website for The Journal News, one of Gannett's publications. Whatever his purpose, the effect (should he be successful) is clear: these forums, which The Journal News instituted precisely to foster the free exchange of information and ideas, will become severely chilled if the public feels that they cannot participate in such forums without the risk of being unmasked and, perhaps, haled into court should their speech offend the wrong person. Thus, in addition to the other significant deficiencies in plaintiff's subpoenas that require their quashing, the Court should likewise do so in order to vindicate the strong First Amendment rights at stake in this matter.

## BACKGROUND

The Journal News is a daily newspaper that is widely distributed throughout Westchester, Bronx, New York, Putnam, and Rockland Counties and in surrounding areas of New York and Southern Connecticut. It is published by, and operates as a business division of, Gannett. (Affidavit of Mark Fowler ("Fowler Aff.") ¶ 2.) The Journal News operates a website, www.lohud.com, which contains, among other things, on-line community forums on which readers may post comments regarding news, opinion, or anything of public or community interest. (Id. ¶ 3.)

On February 5, 2008, three subpoenas issued by plaintiff's counsel, Jonathan Lovett, and dated February 4 were purportedly served by being left at the front desk of The Journal News. The subpoenas were left with a receptionist who is not authorized to accept service of process, nor did she tell the process server that she was. (Declaration of Roberta Maurer ("Maurer Decl.") ¶ 2.) The three subpoenas – directed to Gannett, "The Journal News," and "The Journal News Westchester"[1] – each seek production of identically described documents, namely

> With respect to the following bloggers [sic], produce each document in your possession, custody and/or control regarding the i) screen name, ii) e-mail address, iii) gender, iv) year of birth, v) home zip, and vi) country: Ethan Edwards; Consultant; and Mob Buster.[2]

(Id. Ex. A.) The subpoenas commanded production by February 12, 2008.

The apparent ineffectiveness of the service notwithstanding, Gannett's in-house counsel, Barbara Wall, contacted Mr. Lovett on February 11 and asked him to withdraw the subpoena. Ms. Wall explained, with supporting authority, Gannett's position that the privacy and free

---

[1] As already stated, The Journal News is a business division of Gannett and not a separate entity. There is no publication, division or entity called "The Journal News Westchester." Gannett's motion is directed to all three subpoenas.

[2] Although misusing the term "blogger," Gannett believes that plaintiff is actually referring to posters or commenters on The Journal News on-line forums.

2

speech rights of the commenters whose identifying information was sought in the subpoenas (the "Posters") created a qualified privilege that required plaintiff to make a showing of merit and necessity to overcome. (Fowler Aff. ¶ 7.) Mr. Lovett agreed to review the authority and temporarily adjourned the return date for the subpoena. On February 13, Mr. Lovett contacted Ms. Wall by e-mail and refused to withdraw the subpoena, further requesting that any production, or a motion to quash, be made "this week." (Id. ¶ 8.)

That evening, after retaining the undersigned as counsel, Gannett served upon plaintiff's counsel a set of objections pursuant to Fed. R. Civ. P. 45(c)(2). (Id. ¶ 9 & Ex. B.) Despite the fact that the service of such objections rendered any production by Gannett unnecessary, on February 14, counsel placed two calls to Mr. Lovett in attempt to discuss the matter and discuss scheduling should plaintiff intend to file a motion to compel. As Mr. Lovett never returned these calls, Gannett has determined in an abundance of caution to file this expedited motion to quash the subpoenas. (Id. ¶ 10.)

## ARGUMENT

### I. SERVICE OF THE SUBPOENAS WAS INEFFECTIVE

As an initial matter, the subpoenas must be quashed because they were not served properly. Although Fed. R. Civ. P. 45 does not specify how service must be effected on a corporation, courts have generally incorporated the provisions relating to service of a summons on a corporation, i.e., requiring service upon an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); see State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., Inc., No. 04 CV 5045, 2005 WL 2465818, at *3 (E.D.N.Y. Oct. 6, 2005); see also In re Grand Jury Subpoenas Issued to Thirteen Corps., 775 F.3d 43, 46 (2d Cir. 1985) ("A corporation may be served through an

officer or agent explicitly or implicitly authorized to accept service of process."). Here, the purported service was made by delivery to a receptionist who neither was authorized to receive such service nor represented that she was. (Maurer Decl. ¶ 3; Fowler Aff. ¶ 4.) Accordingly, service of the subpoenas was never properly made and they are therefore invalid.

## II. THE SUBPOENAS SEEK INFORMATION UNRELATED TO THIS CASE AND THEREFORE IMPOSE AN UNDUE BURDEN ON GANNETT

Rule 45 provides that "[o]n timely motion, the issuing court <u>must</u> quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv) (emphasis added). "Whether a subpoena imposes an 'undue burden' 'depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" <u>Night Hawk Ltd. v. Briarpatch Ltd., L.P.</u>, No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (quoting <u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)). However, since Rule 26(b)(1) limits the scope of discovery to information that is "relevant," then "[o]bviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then <u>any burden whatsoever</u> imposed upon [the witness] would be by definition 'undue.'" <u>Compaq Computer Corp. v. Packard Bell Elecs.</u>, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (emphasis in original).

It is plaintiff's burden, as the party issuing the subpoena, to "demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." <u>Night Hawk</u>, 2003 WL 23018833, at *8. Furthermore, "'the status of a witness as a non-party to the underlying litigation entitles [the witness] to consideration regarding expense and inconvenience.'" <u>Id.</u> (quoting <u>Concord Boat</u>, 169 F.R.D. at 49).

4

It does not appear that plaintiff can make the initial showing of relevance required of him. The complaint in this case alleges causes of action for defamation and civil rights violations stemming <u>entirely</u> from remarks allegedly made by defendant Philip Amicone, the Mayor of Yonkers, at a Republican meeting on the evening of October 17, 2007. (Compl. ¶¶ 5-15.) There is simply no conceivable relevance of the identity and personal information of three on-line commenters to such claims.

Indeed, it seems likely that what plaintiff is actually trying to do with his subpoenas is to discover the identities of the Posters so that he can then file some type of action against <u>them</u>. If so, the subpoena is completely improper. "Rule 45 does not permit a party to use a subpoena to obtain information from non-parties that is unrelated to the action in which the Rule 45 subpoena is issued." <u>Collins v. Experian Credit Reporting Serv.</u>, No. 3:04 CV 1905, 2006 WL 2850411, at *1 (D. Conn. Oct. 3, 2006); <u>see also</u> <u>Night Hawk</u>, 2003 WL 23018833, at *8. Whatever plaintiff's ulterior motives, however, it is plain that the subpoenas seek documents that are not properly discoverable from a non-party such as Gannett, and accordingly the subpoena must therefore be quashed.

**III.   THE POSTERS' FIRST AMENDMENT RIGHT TO SPEAK ANONYMOUSLY PRECLUDES ENFORCEMENT OF THE SUBPOENAS**

Because the subpoenas were neither properly served nor seek properly discoverable information, the Court need not reach the First Amendment issues implicated by the subpoenas. Should the Court determine otherwise, however, it is plain that any claim to enforcement of the subpoenas by plaintiff must be balanced against the serious First Amendment implications of infringing upon the Posters' right to speak with anonymity. These First Amendment rights create a qualified privilege that require a heightened showing of need and materiality by plaintiff to be overcome. Gannett submits that plaintiff cannot possible make the necessary showing.

The Supreme Court has consistently defended the right to anonymous speech in a variety of contexts, noting that a speaker's "decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342 (1995); see also Watchtower Bible & Tract Soc. v. Village of Stratton, 536 U.S. 150, 166-67 (2002); Vermont Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 387 (2d Cir. 2000) ("anonymous communications . . . have played a central role in the development of free expression and democratic governance"). The First Amendment, including its concern for a speaker's choice to remain anonymous, is as fully applicable to speech on the Internet as it is to paper leaflets. See Reno v. American Civil Liberties Union, 521 U.S. 844, 870 (1997) ("Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer. . . . [O]ur cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium.").

Indeed, "[t]he Internet is a particularly effective forum for the dissemination of anonymous speech." Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004). As stated just this month by the California Court of Appeals,

> [O]rdinary people with access to the Internet can express their views to a wide audience through the forum of the online message board. The poster's message not only is transmitted instantly to other subscribers to the message board, but potentially is passed on to an expanding network of recipients, as readers may copy, forward, or print those messages to distribute to others. The use of a pseudonymous screen name offers a safe outlet for the user to experiment with novel ideas, express unorthodox political views, or criticize corporate or individual behavior without fear of intimidation or reprisal. In addition, by concealing speakers' identities, the online forum allows individuals of any economic,

6

> political, or social status to be heard without suppression or other intervention by the media or more powerful figures in the field.

Krinsky v. Doe 6, __ Cal. Rptr. 3d __, 2008 WL 315192, at *4 (Cal. App. Feb. 6, 2008); see also Doe v. Cahill, 884 A.2d 451, 456 (Del. 2005) ("Internet speech is often anonymous. . . . This unique feature of [the internet] promises to make public debate in cyberspace less hierarchical and discriminatory than in the real world because it disguises status indicators such as race, class and age.") (internal quotation omitted).

Because of these important values, efforts to use the power of the courts to pierce anonymity by subpoena implicate First Amendment concerns. Sony, 326 F. Supp. 2d at 563. Such efforts are therefore subject to a qualified privilege, which must be considered – and overcome – before permitting discovery of a defendant's identity. See McMann v. Doe, 460 F. Supp. 2d 259, 266 (D. Mass. 2006) ("Courts must adopt an appropriate standard such that aggrieved parties can obtain remedies, but cannot demand the court system unmask every insolent, disagreeable, or fiery anonymous online figure."). The right to anonymity is not absolute, however; it may be pierced where necessary for a plaintiff to receive redress for legitimate and cognizable grievances for, e.g., copyright infringement or defamation. See Sony, 326 F. Supp. 2d at 562-63; Cahill, 884 A.2d at 456.

Thus, courts faced with requests to require identification of anonymous potential defendants have attempted to strike a balance between the First Amendment rights of the speaker and the legitimate needs of a potential plaintiff. See Krinsky, 2008 WL 315192, at *5. It is critical that the hurdle for such identification be set sufficiently high:

> We are concerned that setting the standard too low will chill potential posters from exercising their First Amendment right to speak anonymously. The possibility of losing anonymity in a future lawsuit could intimidate anonymous posters into self-censoring their comments or simply not commenting at all. A defamation plaintiff, particularly a public figure, obtains a very

7

> important form of relief by unmasking the identity of his anonymous critics. The revelation of identity of an anonymous speaker may subject [that speaker] to ostracism for expressing unpopular ideas, invite retaliation from those who oppose her ideas or from those whom she criticizes, or simply give unwanted exposure to her mental processes.

Cahill, 884 A.2d at 457.

While, in the absence of Supreme Court (or, in this case, Second Circuit) guidance, there is no controlling standard for this balance, most recent cases have adopted the test enunciated in the leading case of Dendrite Int'l v. Doe No. 3, 775 A.2d 756 (N.J. Super. App. Div. 2001), or some slight variant thereof. Dendrite announced a four-step test for a court faced with a request to enforce a subpoena requesting the identity of a potential defendant:

1) "[T]he trial court should first require the plaintiff to undertake efforts to notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, and withhold action to afford the fictitiously-named defendants a reasonable opportunity to file and serve opposition to the application. These notification efforts should include posting a message of notification of the identity discovery request to the anonymous user on the ISP's pertinent message board";

2) "The court shall also require the plaintiff to identify and set forth the exact statements purportedly made by each anonymous poster than plaintiff alleges constitutes actionable speech";

3) "The complaint and all information provided to the court should be carefully reviewed to determine whether plaintiff has set forth a prima facie cause of action against the fictitiously-named defendants. In addition to establishing that its action can withstand a motion to dismiss . . . the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis"; and

4) "The court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff properly to proceed."

8

Dendrite, 775 A2d at 760. This test, with slight modifications, has been widely followed by subsequent courts. See Krinsky, 2008 WL 315192, at *7-11; Greenbaum v. Google, 845 N.Y.S.2d 695, 698-99 (Sup. Ct. N.Y. County 2007); Mobilisa, Inc. v. Doe I, 170 P.3d 712, 719-21 (Ariz. App. 2007); Cahill, 884 A.2d at 459-60; Highfields Capital Mgmt. L.P., 385 F. Supp. 2d 969, 974-76 (N.D. Cal. 2005).[3]

At this juncture, Gannett has no idea what plaintiff's motivation in seeking the Posters' identity is. If it is to identify potential defendants (e.g., plaintiff claims to have been defamed by the Posters), then as already stated, supra at 5, plaintiff's attempt to do so via a subpoena in this case is patently improper, and thus the Court does not need to even apply the Dendrite test. In any case, it is plain that not only has plaintiff not satisfied either of the first two parts of the test, but also that he will have a difficult hurdle to overcome the last two.

If plaintiff's contention is that the Posters represent potential witnesses, and not defendants, then the balance of interests shifts significantly. Absent a contention that the anonymous speaker whose identity is sought has engaged in defamation, or copyright infringement, or some other form of speech not afforded First Amendment protection, then the balance must shift much more strongly towards protection of the speaker. Moreover, the interest of the plaintiff lessens significantly, because failure to obtain the speaker's identity is not necessarily fatal to the claim – as it is when the speaker is the potential defendant – but rather

---

[3] In Sony, Judge Chin of this district considered the following factors: (1) "a concrete showing of a prima facie claim of actionable harm," (2) "specificity of the discovery request," (3) "the absence of alternative means to obtain the subpoenaed information; (4) "a central need for the subpoenaed information to advance the claim," and (5) "the party's expectation of privacy." 326 F. Supp. 2d at 556. Some courts have apparently understood Judge Chin, by "prima facie claim," to be referring to effectively a motion to dismiss standard, see Mobilisa, 170 P.3d at 720, but Judge Chin actually reviewed evidence beyond the pleading in making his determination, see 326 F. Supp. 2d at 565-66. To the extent that the Sony standard's "concrete showing" means the submission of actual evidence to support the claim, then at least as to claim viability it is quite similar to the Dendrite test. It should also be noted that the "speech" at issue in Sony was internet file sharing, an activity that, while Judge Chin held it to be entitled to some First Amendment protection, is "not engaging in true expression" and not "entitled to the broadest protection of the First Amendment." Id. at 564.

9

represents a failure to obtain evidence to support that claim, which (in most cases, certainly) may still proceed against the actual defendant.

Thus, although case law dealing with unmasking potential witnesses is sparse, the one court to address the issue has squarely held that the standard for identifying witness must be a higher one: "nonparty disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1094-05 (W.D. Wash. 2001). The 2TheMart.com court laid out four factors for consideration:

> whether: (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

Id. at 1095.[4]

Again, without at this stage knowing the claimed purpose of plaintiff's subpoenas, this test cannot be fully addressed, however, it seems highly unlikely it could be met. Moreover, Gannett submits that the 2TheMart.com test itself is not a sufficiently high bar to protect the critical First Amendment values at stake. The 2TheMart.com court sought to apply a higher standard than what were then the leading (if not only) cases involving Doe defendants: Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573 (N.D. Cal. 1999), and In re Subpoena Duces Tecum to America Online, Inc., 2000 WL 1210372, rev'd on other grounds, 542 S.E.2d 377 (Va. 2001).

---

[4] In Rancho Pubs. v. Superior Ct. (Downey Community Hosp. Found.), 68 Cal. App. 4th 1538 (Cal. App. 1999) the court dealt with subpoenas to disclose the identities of anonymous authors of advertorials; the targets of subpoenas were not shown to be directly connected to the alleged defamation in the underlying suit. While not laying out a specific test, the court stated that "mere relevance is not sufficient; indeed, such private information is presumptively protected" and noted several factors, including "the importance of confidentiality, whether journalists are parties, whether plaintiffs have made a prima facie case of falsity, and whether the information sought goes to the heart of their suit . . . or is only peripheral to that matter." Id. at 1550.

See 2TheMart.com, 140 F. Supp. 2d at 1094-95.  The "good faith" standard of America Online – which the 2TheMart.com court apparently imported into the first prong of its test as a measure of the underlying claim's viability – is obviously the "most deferential" to plaintiffs, Krinsky, 2008 WL 315192, at *7, and has been widely rejected as too unsolicitous of First Amendment rights, see id.; Cahill, 884 A.2d at 457.  Moreover, the 2TheMart.com court did not have the benefit of the decision in Dendrite, which as discussed requires plaintiff to produce evidence to support its claims, at least on a prima facie basis.[5]

Given the fact that the hurdle for obtaining witness identity should be higher than that for potential defendants, and given that Dendrite and similar cases represent the growing consensus with respect to the latter, Gannett submits that proper respect for the First Amendment issues involved requires that at a minimum, the plaintiff should be required to: (1) notify the targets of the subpoena, by posting or otherwise; (2) specify precisely the postings that plaintiff claims demonstrate that the poster possesses discoverable evidence; (3) establish, with sufficient evidence, a prima facie case of a "core claim or defense" to which the purported evidence is relevant; (4) show that the evidence possessed by the anonymous witness is directly and materially relevant to such claims or defenses; (5) establish that evidence sufficient to establish or disprove such claim or defense is unavailable from alternative sources; and (6) 'balance the defendant's First Amendment right of anonymous free speech against the strength of the prima

---

[5] Dendrite was decided approximately three months after 2TheMart.com.  Seescandy.com stated that, in addition to jurisdictional tests that would not, in this case, be relevant, the plaintiff "should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss."  185 F.R.D. at 579.  Subsequent courts have generally rejected this standard as too lenient, see, e.g., Mobilisa, 170 P.3d at 720, although it should be noted that the Seescandy.com court actually went beyond the pleadings and examined the evidence and likened the procedure to establishing probable cause.  185 F.R.D. at 579-80.

11

facie case presented and the necessity for the disclosure of the anonymous [witness's] identity," Dendrite, 775 A.2d at 760.[6]

As previously discussed, whether plaintiff could possibly make this showing remains to be seen and cannot be assessed until plaintiff provides some argument (and evidence) as to why he is seeking to invade the Posters' right to anonymity. The hurdle is properly a high one, however, and Gannett submits that it is highly improbable plaintiff can overcome it. Assuming that is the case, the Court should protect the identities of the Posters – and, by extension, all those who freely participate in the wide-open discourse of the Internet – and quash these improper subpoenas.

## **CONCLUSION**

For the foregoing reasons, Gannett respectfully requests that the subpoenas be quashed in their entirety.

Dated: New York, New York
February 15, 2008

                        SATTERLEE STEPHENS BURKE & BURKE LLP

                        By:_____/s/_____
                            Mark A. Fowler (MF-4605)
                            Glenn C. Edwards (GE-0696)
                       Attorneys for Non-Party Gannett Satellite Information
                          Network, Inc.
                     230 Park Avenue
                     New York, New York 10169
                     (212) 818-9200

---

[6] Alternatively, with respect to showings of materiality and exhaustion of alternative sources, it could well be argued that the proper test for revealing an on-line speaker's identity should be the akin to that for forcing a journalist to reveal confidential sources. Particularly where the on-line speech involves the conveying of information of public interest, the interests sought to be protected via confidentiality – i.e., to avoid the chilling of sources who might not reveal such information to the public if forced to be identified – are quite similar. In order to compel disclosure of confidential sources, a party must make a "clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 33 (2d Cir. 1999).